## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

-------------------------------------------------- x

**IN RE**

**UNITED STATES OF AMERICA,**

    **v.**

**I. LEWIS LIBBY,**

**Criminal Case No. 05-394 (RBW)**

CASE NUMBER   1:07MS00002

JUDGE:  Colleen Kollar-Kotelly

DECK TYPE: Miscellanous

DATE STAMP: 01/04/2007

    :

-------------------------------------------------- x

### APPLICATION FOR ACCESS TO VOIRE DIRE AND AUDIO RECORDINGS

This Application is respectfully submitted by ABC, Inc., American Society of Newspaper

Editors, the Associated Press, Bloomberg News, Cable News Network LP, LLLP, CBS

Broadcasting, Inc., Dow Jones & Company, Inc., The E.W. Scripps Company, The Hearst

Corporation, Los Angeles Times, The McClatchey Company, NBC News, National Public

Radio, Inc., Newspaper Association of America, the Radio-Television News Directors

Association, the Reporters Committee for Freedom of the Press, Society of Professional

Journalists, USA TODAY and the Washington Post (hereafter the "Media Applicants"), pursuant

to Local Criminal Rule 57.6, (a) in response to the Court's Order of December 19, 2006 inviting

comment on issues relating to public access to jury selection, and (b) in support of an

Application for access to the audio recordings of the trial proceedings maintained by the Court.

As discussed below, the public's right of access to the jury selection proceedings is protected by

a constitutional right of access.  In addition, the public interest would be well-served by

affording public access to the audio tapes of the actual trial proceedings, once each day's

proceedings are concluded.

## ARGUMENT

**A.     Jury Selection Should Presumptively Be Open
and Any Private Voir Dire Should be the Rare Exception**

The right of the People to know how the government is exercising power in their name is

critical to the functioning of our democracy. *Grosjean v. Am. Nat'l Press Co.*, 297 U.S. 233, 250

(1936) ("[I]nformed public opinion is the most potent of all restraints upon misgovernment.").[1]

The Supreme Court thus held in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980),

that the First Amendment conveys an affirmative, enforceable right of public access to criminal

proceedings, just as the right of association, right of privacy, right to travel, and right to be

presumed innocent are implicit in other provisions of the Bill of Rights. *Id.* at 577 (Burger, C.J.).

The right exists both to enhance the likelihood that justice will be done and to "satisfy the

appearance of justice." *Id.* at 596.

In *Press Enterprise v. Superior Court of California*, 464 U.S. 501 (1984) *("Press*

*Enterprise I")*, the Court specifically extended the right of access to juror selection in a high

profile criminal prosecution – there a capital murder case. The trial court in that case had closed

*voir dire* out of a concern that, "if the press were present, juror responses would lack the candor

necessary to assure a fair trial." *Id.* at 503. The Supreme Court reversed, observing that

openness "enhances both the basic fairness of the criminal trial and the appearance of fairness so

essential to public confidence in the system." *Id.* at 508. The Court rejected as false any

---

[1] *See also Mills v. Alabama*, 384 U.S. 214, 219 (1966) ("the press serves and was designed to serve as a
powerful antidote to any abuses of power by governmental officials and as a constitutionally chosen
means for keeping officials elected by the people responsible to all the people whom they were selected to
serve"); *First Bank of Boston v. Bellotti*, 435 U.S. 765, 783 (1978) ("First Amendment goes beyond
protection of the press and the self-expression of individuals to prohibit government from limiting the
stock of information from which members of the public may draw").

supposed dichotomy between the defendant's rights and the public interest in such circumstances:

> No right ranks higher than the right of the accused to a fair trial. But the primacy of the accused's right is difficult to separate from the right of everyone in the community to attend the *voir dire* which *promotes fairness*. Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.

*Id.* at 503 (emphasis added).

Moreover, the Court made clear just how strong the presumption of public access to *voir dire* must be in practice. The Court held that the presumption *might* be overcome only when "interrogation touches on deeply personal matters that person has legitimate reasons for keeping out of the public domain." *Id.* at 511. By way of example, the Court offered the hypothetical that "a prospective juror might privately inform the judge that she, or a member of her family, had been raped..." *Id.* at 512. Even in those circumstances, the Court made clear that the privacy interests of such a juror must be balanced against the interests served by public access before that specific question and answer might be concealed from public view. *Id. See also ABC, Inc. v. Stewart*, 360 F.3d 90 (2d Cir. 2004); *In re Memphis Publ'g Co.*, 887 F.2d 646 (6th Cir.1989); *United States v. Peters*, 754 F.2d 753 (7th Cir.1985) (all reversing the closure of *voir dire*).

As this Court has recognized, *Cable News Network, Inc. v. United States*, 824 F.2d 1046 (D.C. Cir. 1987) applied the *Press Enterprise I* framework to a case remarkably similar to this one, a perjury prosecution of a senior Executive Branch official. *CNN* makes clear that *voir dire* should take place in open court unless and until a juror expresses a desire for privacy, and even then any circumstances in which public access to the jury selection process may be restricted are sharply "limited." *Id.* at 1048. Specifically, absent extraordinary circumstances not present here,

access may only be limited with respect to specific questions that touch upon the kind of "deeply personal [matters] contemplated by *Press Enterprise*." *Id.*

Critically, jurors may not be permitted to exercise "absolute discretion" over whether such "deeply personal" matters are implicated by any particular question posed in *voir dire*. *Id.* Rather, if a juror makes an affirmative request to answer a particular question in private, the Court must then consider whether the request indeed implicates a "deeply personal" matter. If so, the Court must then determine whether the request for privacy legitimately outweighs "the value to the public of an open *voir dire*." *Id.* at 1049. It may only grant the request after making "individualized findings," that are "sufficiently detailed to permit review at the appellate level," explaining why the balance favors closure. *Id.*

While it is of course impossible to address exactly how these principles should be applied to the merits of any individual juror requests before they occur, in general the nature of this case suggests that any private *voir dire* should be the rare exception, if it occurs at all. The charges at issue here are far less likely to implicate the kind of "deeply personal" issues envisioned by *Press Enterprise I*, a case that involved the rape and murder of a teenage girl. There are no issues presented of racial prejudice, sexual assault, drug abuse, witness intimidation or other factors that courts on occasion have held warrant steps to address juror concerns about public disclosure of their own intimate facts.[2] On the other side of the ledger, the values served by

---

[2] We understand that no written questionnaires will be used as part of the jury selection process, but in the event that they are, any such questionnaires should promptly be made available for public inspection. The public has a constitutional right to inspect juror questionnaires unless the strict First Amendment standard for closure is satisfied and on-the-record findings to support the sealing of the questionnaires. As recognized in *State ex. rel. Beacon Journal Publ'g Co. v. Bond*, 781 N.E.2d 180, 188-189 (Ohio 2002), the "First Amendment guarantees a presumptive right of access to juror questionnaires" and "virtually every court having occasion to address this issue has concluded that such questionnaires are part of *voir dire* and thus subject to a presumption of openness." *See, e.g., Application of The Washington Post Co.*, Misc. No. 92-301, 1992 WL 233354 at *2 (D.D.C. 1992) (requiring jury questionnaires, of both actual and prospective jurors, to be released before jury impaneled, with only "deeply personal and private

open proceedings are at their apex when a high government official is the subject of a criminal

prosecution.

**B.      The Court Should Make Publicly Available The
         Audio Recording of the Proceedings During the Trial**

It is our understanding that this Court uses an audio system to record its proceedings, at

least in part. In recent years, federal courts in high-profile cases of particular public interest have

increasingly opened their proceedings to permit the public to listen to a court's own recording of

what transpired in the courtroom, either while it occurs or shortly after the fact. Most notably,

the United States Supreme Court signaled a new flexibility in this area when, for the first time, it

released to the public the audiotape of the oral argument in the case which determined the

outcome of the 2000 Presidential election, shortly after the conclusion of the argument. *See*

Letter from Chief Justice Rehnquist to Barbara Cochran, Radio-Television News Directors

Association (Nov. 28, 2000) ("[T]he Court recognizes the intense public interest in the case and

for that reason today has decided to release a copy of the audiotape of the argument promptly

after the conclusion of the oral argument.") (Siegel Decl., Ex. 1). The Supreme Court argument

was immediately broadcast in its entirety on radio and television stations throughout the United

States. Since then, the Supreme Court has regularly authorized the same-day release of

audiotapes of arguments in other high-profile cases as well, such as all of the recent arguments

concerning the legal boundaries of the war on terrorism (Siegel Decl., Ex. 2).

Lower federal courts have also started to follow the Supreme Court's lead. For example,

the D.C. Circuit went further and permitted the press to disseminate live audio coverage of the

---

information" redacted); *United States v. King,* 140 F.3d 76, 80 (2d Cir. 1998) (upholding determination of
the district court that "completed juror questionnaires . . . will be disclosed when the jury has been
impaneled"); *Lesher Commc'ns., Inc. v. Superior Court,* 274 Cal. Rptr. 154 (Cal. Ct. App. 1990)
(requiring release of juror questionnaires).

oral arguments in *United States v. Microsoft Corporation. See Appeals Hearing to Be Live on Radio, Internet,* SEATTLE TIMES, Feb. 13, 2001, at C1 (Siegel Decl., Ex. 3). The Ninth Circuit and many other federal Circuits routinely post recordings of oral arguments on their websites, and in some cases have even permitted cameras in the courtroom. *See A&M Records, Inc. v. Napster, Inc.,* No. 00-16401 (9th Cir. Sept. 25, 2000) (order granting applications to audio or video record) (Siegel Decl., Ex. 4).

A significant number of federal district courts have also recognized the value of public dissemination of audio recordings of trial proceedings and are making audio recordings of judicial proceedings available as a matter of course for courtrooms which use recording equipment. To cite just a few random examples, the website of the United States District Court for the Eastern District of Pennsylvania instructs interested members of the public how to purchase audio recordings of its proceedings in CD or tape format, just as written transcripts may be purchased. Similarly, the United States District Court for Nevada makes audio recordings available for purchase for those courtrooms equipped to make such recordings, as its website explains. Because in some district courts proceedings before federal magistrate judges are only recorded electronically, those proceedings are often available as well, as is the case in the United States District Court for the Central District of California.

In all of these cases, permitting after-the-fact audio access to court proceedings has served the fundamental purposes of public access recognized in *Richmond Newspapers* and its progeny, providing Americans with the opportunity to more directly access their judicial system as it wrestles with some of the most significant legal cases of our time. News organizations routinely post such tapes on their websites, which enables any member of the public to easily access them directly. These examples demonstrate that federal courts are now widely

recognizing that the opportunity to listen to all or portions of court proceedings conveys a much more complete understanding of what occurs in a judicial proceeding, as compared to reading a dry transcript or listening to second-hand descriptions by journalists. Common sense suggests that live voices convey the critical nuances of emotion, emphasis and argument that disappear when filtered through the medium of stenographic recording or journalistic reporting.

By opening up their courtrooms in this manner, federal courts are giving citizens the means to participate in the judicial process and the satisfaction of more directly understanding the system than reliance on highly condensed, second-hand news reports permits. *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982) (recognizing that public access "permits the public to participate in and serve as a check upon the judicial process – an essential component in our structure of self-government"); *United States v. Simone*, 14 F.3d 833, 839 (3d Cir. 1994) (explaining that the right to observe court proceedings provides "a significant community therapeutic value as an outlet for community concern, hostility and emotion") (quotations and citation omitted). Particularly in cases of unique public interest, listening to court proceedings treats citizens to a civics lesson— they learn not only about the particular issues presented to the court, but also more about the judicial process itself by following the proceedings far more closely. *See Globe Newspaper*, 457 U.S. at 606 (emphasizing that access to court proceedings heightens "public respect for the judicial process").

In this Court, Local Criminal Rule 53.1.1 grants the Court discretion to permit public access to the Court's own audio recordings of its proceedings. The Rule states:

> The taking of photographs and operation of tape recorders inside the United States Courthouse and radio or television broadcasting from inside the courthouse during the progress of or in connection with judicial proceedings, including proceedings before a United States Magistrate Judge, whether or not court is actually in session, are prohibited. A judge may, however, permit (1) the use of electronic or photographic means for the presentation of evidence or the perpetuation of a

7

record, and (2) the broadcasting, televising, recording, or photographing of investitive, ceremonial, or naturalization proceedings. Contents of official tapes that are made as part of the record in a case will be treated in the same manner as official stenographic notes.

The Rule clearly distinguishes between the use of tape recorders by trial observers or trial participants inside the courthouse, which is prohibited, and after-the-fact access to the Court's own electronic recording of proceedings, which is not. The Rule thus implicitly recognizes what numerous other federal courts have recognized, that common objections to live broadcasting or televising of court proceedings do not apply to after-the-fact access to the Court's own audio recordings, particularly in this particular case. Virtually all of the objections sometimes voiced to the presence of cameras in the courtroom relate to concerns over the impact that live cameras may have on trial participants, be it lawyers who may be tempted to "grandstand" or witnesses who may feel inhibited about testifying on television. Regardless of one's views about the merits of those concerns, audio recordings simply do not raise those issues to any meaningful degree. Moreover, since the Court's own recordings may only be released after each day's proceedings have concluded, if release of any particular portion of these proceedings might raise any such concerns, the Court remains free to exercise its discretion to decline to release that specific portion.

If there were ever a case where release of audio recordings is unlikely to have any impact on the proceedings--other than the beneficial one of more fully informing the public—it is this one. Most of the key witnesses are public figures who regularly appear in the media. Knowledge that their testimony might be released on audiotape will not make them feel awkward or uncomfortable, and certainly no more so than testifying in front of a courtroom filled with reporters. The lawyers involved on both sides are also some of the nation's most experienced and respected attorneys, who likewise will surely not be deterred from zealously representing

their clients merely because their voices might be heard by members of the public. Moreover, this case contains no salacious facts, involves no prurient interests, and raises no privacy concerns.

At a minimum, if the Court does not wish to release audiotapes of all of the proceedings on a daily basis, Applicants respectfully request that it consider releasing portions of the proceedings that will likely be of most interest to the public, including specifically the attorneys' opening and closing statements and the testimony of key witnesses such as the Vice-President of the United States. There is overwhelming public interest in this trial, and the events that transpire in the courtroom should be made available to the public to the greatest extent possible. *Craig v. Harney*, 331 U.S. 367, 374 (1947) ("[a] trial is a public event. What transpires in the court room is public property.").

## CONCLUSION

The intense public interest in this case is further reason to ensure that the benefits of public access to the criminal justice system are fully realized. The Media Applicants respectfully request, therefore, that the Court resist any efforts to limit public access to *voir dire* and that it provide a daily copy of the audio tape.

Dated: Washington, D.C.
January 4, 2007

Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ LLP

By: _____
David A. Schulz  (D.C. Bar No. 459197)
Nathan Siegel (D.C. Bar No. 446253)
Thomas Curley (D.C. Bar No. 473798)

1050 Seventeenth Street, NW, Suite 800
Washington, DC 20036
t: (202) 508-1100
f: (202) 861-9888

*Counsel for Media Applicants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2007, I caused true and correct copies of the Media Applicants' Application for Access to Voir Dire and Audio Recordings, the Declaration of Nathan Siegel and Certificate of Disclosure Pursuant to Rule 7.1 to be served via first-class mail, postage prepaid upon the following:

Patrick Fitzgerald, Esq.
Debra R. Bonamici, Esq.
Office of the United States Attorney/Office of the Special Counsel
Northern District of Illinois
219 South Dearborn Street
Chicago, IL 60604

Kathleen Kedian, Esq.
Peter Robert Zeidenberg, Esq.
U.S. DEPARTMENT OF JUSTICE
1400 New York Avenue, N.W.
Washington, DC 20005

John DeWitt Cline, Esq.
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104-1500

Joseph A. Tate, Esq.
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104

William H. Jeffress, Jr., Esq.
Alex Joseph Bourelly, Esq.
Alexandra M. Walsh, Esq.
BAKER BOTTS L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004

Theodore V. Wells, Jr., Esq.
James Lewis Brochin, Esq.
PAUL, WEISS, RIFKIND, WHARTON & GARRISON
1285 Avenue of the Americas
New York, NY 10019-6031

_____
Thomas Curley

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
-------------------------------------------  x
                                             :
IN RE                                        :
                                             :
UNITED STATES OF AMERICA,                    :   Miscellaneous Case No. _____
                                             :
   v.                                        :
                                             :
I. LEWIS LIBBY,                              :
                                             :
Criminal Case No. 05-394 (RBW)               :
                                             :
-------------------------------------------  x
```

### DECLARATION OF NATHAN SIEGEL

1.    My name is Nathan Siegel. I am a member of the law firm of Levine Sullivan Koch & Schulz L.L.P., and represent non-parties ABC, Inc., American Society of Newspaper Editors, the Associated Press, Bloomberg News, Cable News Network LP, LLLP, CBS Broadcasting Inc., Dow Jones & Company, Inc., The E.W. Scripps Company, The Hearst Corporation, Los Angeles Times, The McClatchey Company, NBC News, National Public Radio, Inc., Newspaper Association of America, The Washington Post, the Radio-Television News Directors Association, the Reporters Committee for Freedom of the Press, Society of Professional Journalists and USA TODAY (hereafter the "Media Applicants") in this matter. I submit this declaration in support of the Media Applicants' Application for Access to Voir Dire and Audio Recordings, filed pursuant to Local Criminal Rule 57.6.

2.    Attached hereto as Exhibit 1 is a true and correct copy of Letter from Chief Justice Rehnquist to Barbara Cochran, Radio-Television News Directors Association (Nov. 28, 2000), available *at* http://www.rtnda.org/foi/taperelease.html (last viewed on Jan. 4, 2007).

1

3.    Attached hereto as Exhibit 2 is a true and correct copy of a press release dated April 13, 2004 from the Supreme Court of the United States, available at http://www.supremecourtus.gov/publicinfo/press/pr_04-13-04.html (last viewed on Jan. 4, 2007).

4.    Attached hereto as Exhibit 3 is a true and correct copy of *Appeals Hearing to Be Live on Radio, Internet*, SEATTLE TIMES, Feb. 13, 2001, at C1.

5.    Attached hereto as Exhibit 4 is a true and correct copy of the Docket in *A&M Records, Inc. v. Napster, Inc.*, No. 00-16401 (9th Cir.) (last visited on Aug. 29, 2005).

I declare under penalties of perjury that the foregoing is true and correct, to the best of my knowledge.

Dated:    January 4, 2007

_____
Nathan Siegel



Radio-Television News Directors Association & Foundation

# FREEDOM OF INFORMATION

**Supreme Court Will Promptly Release Tapes and Transcripts of Bush v. Palm Beach County**

Click here for background on this importannt decision for journalists.

**November 29, 2000-** The U.S. Supreme Court has decided to release the audiotape of the Bush v. Palm Beach County Canvassing Board oral argument immediately after the conclusion of the argument December 1 and make it available for broadcast. This is a major victory for RTNDA, which had asked the court to reconsider its earlier decision to bar television and radio coverage. A copy of Chief Justice William H. Rehnquist's letter to RTNDA President Barbara Cochran follows.

---

November 28, 2000

Ms. Barbara S. Cochran, President
Radio-Television News Directors Association
Suite 615
1000 Connecticut Avenue, N.W.
Washington, D.C. 20036-5302

Dear Ms. Cochran:

I have received your letter of November 27, urging that the Court allow television and audio coverage of the proceedings in Bush v. Palm Beach County Canvassing Board, No. 00-836. Yesterday the Court took up the question of televising these proceedings and a majority of the Court remains of the view that we should adhere to our present practice of allowing public attendance and print media coverage of argument sessions, but not allow camera or audio coverage.

For some time, the Court's proceedings have been recorded and a transcript of the proceedings is available shortly after they occur. In light of the public interest in the Bush case, a transcript will be made available on an expedited basis on the day of the argument. Additionally, the Court today has decided to release a copy of the audiotape of the argument promptly after the conclusion of the argument.

Sincerely,

William H. Rehnquist
Chief Justice
Supreme Court of the United States




**Supreme Court of the United States**

| HOME | ABOUT THE COURT | DOCKET | ORAL ARGUMENTS | MERITS BRIEFS | BAR ADMISSIONS | COURT RULES |
| CASE HANDLING GUIDES | OPINIONS | ORDERS | VISITING THE COURT | PUBLIC INFORMATION | JOBS | LINKS |

**FOR IMMEDIATE RELEASE**

April 13, 2004

For Further Information
Contact:
Kathy Arberg
Phone: 202-479-3211

The Supreme Court will release the audiotapes of oral arguments in the following cases on an expedited basis: Rasul v. Bush; Al Odah v. U.S. on Tuesday April 20; Cheney v. U.S.D.C. District of Columbia on Tuesday, April 27; and Hamdi v. Rumsfeld and Rumsfeld v. Padilla on Wednesday, April 28. The audiotapes will be released shortly after the conclusion of each of the arguments.

Sources for the oral argument audiotapes will be as follows:

- Audiotapes will be provided to the network pool, which will in turn provide an offsite, simultaneous feed to member news organizations.
- The audio will be made available in the House and Senate Radio and Television Galleries at the U. S. Capitol on Capitol Hill DA #9. Only press holding proper Congressional credentials will be allowed in the Galleries.
- An off-site mult-box will be available in front of the ABC Washington News Bureau at 1717 DeSales Street, NW. News organizations that are not part of the radio/TV pool systems may plug in at that location. There are metered parking spaces as well as a commercial parking lot adjacent to the ABC building.

Playback of the tapes will be provided as soon as possible following the conclusion of each oral argument. The audiotapes of the arguments will be played in their entirety one time only. The feed of these audiotapes is intended for broadcasters only. Contact ABC News at (202) 222-7600 for more information.

The audiotapes will be made available to the public through the National Archives. Please contact Charles DeArman of the National Archives at (301) 837-1649 or Mark Meader at (301) 837-1970.

---

**Search Tip:** Use the binocular icons to search within PDF documents.

HOME | ABOUT THE COURT | DOCKET | ORAL ARGUMENTS | MERITS BRIEFS | BAR ADMISSIONS | COURT RULES
CASE HANDLING GUIDES | OPINIONS | ORDERS | VISITING THE COURT | PUBLIC INFORMATION | JOBS | LINKS

FOCUS - 27 of 74 DOCUMENTS

Copyright 2001 The Seattle Times Company
The Seattle Times

February 13, 2001, Tuesday Fourth Edition

**SECTION:** ROP ZONE; Business; Pg. C1

**LENGTH:** 291 words

**HEADLINE:** Appeals hearing to be live on radio, Internet
Microsoft antitrust case

**BYLINE:** Bloomberg News

**DATELINE:** Washington

**BODY:**

WASHINGTON--The legal arguments on Microsoft's appeal of a judge's order to split the software giant in two will be broadcast live via an audio feed to radio and TV networks, the appeals court said yesterday.

Bowing to the importance of the landmark antitrust case against Microsoft, the U.S. Court of Appeals for the District of Columbia Circuit said the broadcast would be distributed through the television network pool and over the Internet on Feb. 26 and 27.

Seven appeals judges are to hear seven hours of arguments over the two days on Microsoft's challenge to a lower court's ruling that it illegally protected its Windows monopoly for personal-computer-operating software and should be divided into two companies

The live broadcast will be allowed "due to the widespread public interest in this case and the limited seating" in the courtroom, the court said. It will be the first live broadcast of D.C. Circuit proceedings.

Other federal appeals courts, notably the 9th Circuit in San Francisco, have allowed live broadcasts of arguments, though such media access is rare.

Federal trial courts do not permit the broadcast or recording of proceedings, even though the practice is commonplace in many state courts.

The U.S. Supreme Court allowed a delayed broadcast of the audio feed of two arguments the justices heard late last year over the contested presidential election count in Florida.

The court's decision cleared the way for George W. Bush's victory.

Besides the broadcast network audio feed, the Microsoft arguments will be available on the World Wide Web at www.ABCNEWS.com and www.c-span.org.

Other Web sites will be able to link to the streaming audio page via ABC News, the court said.

**LOAD-DATE:** July 17, 2003



Search for Case                                                    Help

Print Page

# General Docket
## US Court of Appeals for the Ninth Circuit

Court of Appeals Docket #: 00-16401                    Filed: 7/27/00
Nsuit: 3820  Copyright (Fed)
A&M Records, Inc., et al v. Napster, Inc.
Appeal from: Northern District of California (San Francisco)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Case type information:
    1) civil
    2) private
    3) (null)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Lower court information:

    District: 0971-3 : CV-99-05183-MHP
    presiding judge: Marilyn H. Patel, District Judge
    Date Filed: 12/6/99
    Date order/judgment: 7/26/00
    Date NOA filed: 7/27/00
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Fee status: paid

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Prior cases:
  None
Current cases:
              Lead        Member      Start       End
    companion:
              01-16011    01-16556    8/9/01
              01-15998    01-16308    7/12/01
              01-16003    02-15149    1/28/02
    consolidated:
              00-16401    00-16403    7/28/00
              01-16011    01-16308    7/27/01
              01-15998    01-16003    5/23/01
              01-16543    01-16556    8/9/01
    cross appeal:
              01-15998    01-16011    5/24/01
    related:
              00-16403    01-16011    5/24/01
              01-16011    01-16543    8/8/01

Docket as of October 24, 2002 11:15 pm             Page 1

─────────────────────────────────────────────────────────────

00-16401 A&M Records, Inc., et al v. Napster, Inc.

A&M RECORDS, INC., a            Russell J. Frackman, Esq.
corporation ;                   310/312-3119

|                                              |                                      |
|----------------------------------------------|--------------------------------------|
| Plaintiff - Appellee                         | [COR LD NTC ret]                     |
|                                              | MITCHELL SILBERBERG & KNUPP LLP      |
|                                              | 11377 West Olympic Blvd.             |
|                                              | Los Angeles, CA 90064                |
|                                              |                                      |
|                                              | Hank Goldsmith                       |
|                                              | 212/969-3000                         |
|                                              | [COR LD NTC ret]                     |
|                                              | PROSKAUER ROSE, LLP                  |
|                                              | 1585 Broadway                        |
|                                              | New York, NY 10036                   |

GEFFEN RECORDS, INC., a
corporation; INTERSCOPE
RECORDS; SONY MUSIC
ENTERTAINMENT, INC.; MCA
RECORDS, INC.; ATLANTIC
RECORDING CORPORATION; ISLAND
RECORDS, INC.; MOTOWN RECORD
CO.; CAPITOL RECORDS INC.
    Plaintiff - Appellee

    Russell J. Frackman, Esq.
    (See above)
    [COR LD NTC ret]

    v.

NAPSTER, INC.
    Defendant - Appellant

    Terry W. Bird, Esq.
    310-201-2100
    23rd Floor
    [COR LD NTC ret]
    Thomas R. Freeman, Esq.
    FAX 310-201-2110
    310-201-2100
    23rd Floor
    [COR LD NTC ret]
    Jennifer S. Berman, Esq.
    FAX 310/201-2110
    310/201-2100
    23rd Floor
    [COR NTC ret]
    BIRD, MARELLA, BOXER & WOLPERT
    A Professional Corporation
    1875 Century Park East
    Los Angeles, CA 90067-2561

    Daniel Johnson, Jr., Esq.
    650/494-0600
    [COR LD NTC ret]
    FENWICK & WEST
    2 Palo Alto Square
    Palo Alto, CA 94306

    David Boies, Esq.

Docket as of October 24, 2002 11:15 pm                    Page 2

---

00-16401 A&M Records, Inc., et al v. Napster, Inc.

```
                                        914/273-9800
                                        [COR LD NTC ret]
                                        BOIES, SCHILLER & FLEXNER, LLP
                                        80 Business Park Drive
                                        Armonk, NY 10504

                                        Laurence F. Pulgram, Esq.
                                        FAX 415/281-1350
                                        415/875-2300
                                        Ste. 1500
                                        [COR LD NTC ret]
                                        David L. Hayes
                                        415/875-2300
                                        Ste. 1500
                                        [COR LD ret] .
                                        FENWICK & WEST
                                        275 Battery Street
                                        San Francisco, CA 94111

                                        Jonathan Schiller
                                        202/237-2727
                                        Ste. 570
                                        [COR LD ret]
                                        Michael Brille
                                        202/237-2727
                                        Ste. 570
                                        [COR LD NIC ret]
                                        BOIES, SCHILLER & FLEXNER
                                        5301 Wisconsin St. NW
                                        Washington, DC 20015

-----------------------------

CASANOVA RECORDS                        Hannah Bentley
     Amicus                             415/474-7692
                                        # 3C
                                        [COR LD NIC ret]
                                        1000 Chestnut Street
                                        San Francisco, CA 94109

NICOLA BATTISTA                         Hannah Bentley
     Amicus                             (See above)
                                        [COR LD NTC ret]

KUTMUSIC                                Hannah Bentley
     Amicus                             (See above)
                                        [COR LD NTC ret]

ECL3CTIC                                Hannah Bentley
     Amicus                             (See above)
                                        [COR LD NTC ret]

DIGITAL MEDIA ASSOCIATION               Andrew P. Bridges, Esq.

Docket as of October 24, 2002 11:15 pm                Page 3
```

00-16401 A&M Records, Inc., et al v. Napster, Inc.

| | |
|---|---|
| Amicus | 493-9300 |
| | [COR LD NTC ret] |
| | WILSON SONSINI GOODRICH & |
| | ROSATI |
| | 650 Page Mill Road |
| | Palo Alto, CA 94304-1050 |

| | |
|---|---|
| AD HOC COPYRIGHT COALITION, | Thomas W. Kirby |
| Commercial Internet Exchange; | [COR LD NTC ret] |
| Computer & Communications | Scott E. Bain |
| Industry Association; | 202-719-7000 |
| Information Technology | [COR LD NTC ret] |
| Association of America; | WILEY, REIN & FIELDING |
| Netcoalition.com; United | 1776 K Street, N.W. |
| States Internet Industry | Washington, DC 20006 |
| Association; United States | (202)429-7000 |
| Telecommunications Association | |
| Amicus | Bruce G. Joseph |
| | 202-719-7000 |
| | [COR LD NTC ret] |
| | WILEY, REIN & FIELDING |
| | 1776 K Street N.W. |
| | Washington, DC 20006 |

Docket as of October 24, 2002 11:15 pm                    Page 4

---

00-16401 A&M Records, Inc., et al v. Napster, Inc.

A&M RECORDS, INC., a corporation ;; GEFFEN RECORDS, INC., a
corporation; INTERSCOPE RECORDS; SONY MUSIC ENTERTAINMENT,
INC.; MCA RECORDS, INC.; ATLANTIC RECORDING CORPORATION;
ISLAND RECORDS, INC.; MOTOWN RECORD CO.; CAPITOL RECORDS
INC.

               Plaintiffs - Appellees

  v.

NAPSTER, INC.

               Defendant - Appellant

--------------------------

CASANOVA RECORDS; NICOLA BATTISTA; KUIMUSIC; ECL3CTIC;
DIGITAL MEDIA ASSOCIATION; AD HOC COPYRIGHT COALITION,
Commercial Internet Exchange; Computer & Communications
Industry Association; Information Technology Association of
America; Netcoalition.com; United States Internet Industry
Association; United States Telecommunications Association

               Amici Curiae

Docket as of October 24, 2002 11:15 pm                    Page 5

|          | (PANEL). [00-16403, 00-16401] (jr) [00-16401 00-16403] |
|----------|---------------------------------------------------------|
| 9/21/00  | Rec'd ntc of chg of address of Hannah Bentley for Amicus Ecl3ctic, Kutmusic, Nicola Battista, Casanova Records dated 9/18/00 to 1000 Chestnut Street #3C, SF, CA 94109. [00-16401, 00-16403] (jr) [00-16401 00-16403] |

Docket as of October 24, 2002 11:15 pm                    Page 11

---

00-16401 A&M Records, Inc., et al v. Napster, Inc.

| 9/21/00 | Rec'd Amicus Ecl3ctic, Casanova Records, Nicola Battista Kutmusic rpy regarding request to speak at hearing; served on 9/21/00 (FED EXED TO PANEL). [00-16401, 00-16403] (jr) [00-16401 00-16403] |
|---------|----|
| 9/22/00 | Rec'd Amicus' (Independent Music) satisfaction of (minor) brf deficiency (rec'd phone call from csl; certificate of compliance is correct for amicus brfs). [00-16401, 00-16403] (jr) [00-16401 00-16403] |
| 9/25/00 | Filed Amicus' (Casanova Records, Nicola Battista, Kutmusic, Ecl3ctic) emergency motion to intervene as parties [00-16401, 00-16403]; served on 9/25/00 (FED EXED IO PANEL 9/25/00) [3998689] (jr) [00-16401 00-16403] |
| 9/25/00 | Filed aplt's rpy to opposition to motion to strike portions of aples' suppl excerpts of record [3989704-1] in 00-16401, 00-16403; served on 9/25/00 (FED EXED IO PANEL). [00-16401, 00-16403] (jr) [00-16401 00-16403] |
| 9/25/00 | Filed order MOAII (MD) ............the panel has voted to deny the requests for use of still cameras and to grant the applications to audio or video record live or for later broadcast. KTVU Channel 2, KGO Channel 7, KRON-TV, CNN, C-SPAN, McGeorge School of Law, Nat'l Narrowcast Network adn KCBS Radio are directed to arrange a pooling system pursuant to Section 4 of this court's Guidlines, and to notify Jim Hochstadt at 415/556-98122 (phone) or 415/556-9721 (FAX) regarding the details of those arrangements by noon, Wednesday, 9/27/00. [00-16401, 00-16403] (jr) [00-16401 00-16403] |
| 9/26/00 | Filed order (Deputy Clerk: gb) the motionss of Ralph Oman and Copyright Law Professors to file brfs as amicus curiae are GRANTED. [3982105-1] in 00-16401, 00-16403 [00-16401, 00-16403] (jr) [00-16401 00-16403] |
| 9/26/00 | Filed original and 15 copies Amicus (Copyright Law Professors} brf of 15 pages; served on 8/25/00. [00-16401, 00-16403] (jr) [00-16401 00-16403] |
| 9/26/00 | Filed original and 15 copies Amicus' (Ralph Oman) brf of 8 pages; served on 8/24/00. [00-16401, 00-16403] (jr) [00-16401 00-16403] |