UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v.    )<br>)<br>I. LEWIS LIBBY,    )<br>)<br>         Defendant.    )<br>)<br>ABC, Inc., et al.,    )<br>)<br>         Movants    )<br>) | Misc. No. 07-0002 (RBW) |

**ORDER**

On December 19, 2006, this Court issued an order providing interested parties the opportunity to comment on the Court's plan of limiting the number of journalists who may actually be present in Courtroom 16 (the courtroom where live proceedings will be conducted) during the voir dire process, and pursuant to Cable News Network, Inc. v. United States, 824 F.2d 1046 (D.C. Cir. 1987), conducting portions of the individual voir dire in camera.[1]  In response to this Order, the movants filed an Application for Access to Voir Dire and Audio Recordings.  Specifically, the movants seek:  (1) open access to the jury selection process and (2) daily audio recordings of the proceedings.  For the reasons that follow, both applications are denied.

The trial of this matter has generated widespread public and media interest.  In fact, this

---

[1] This Court anticipated hearing from the interested parties during the January 10, 2007 status conference.  However, after reviewing the papers filed with this Court, it has concluded that oral argument is unnecessary.

1

Court expects to receive over one hundred requests for press credentials. Based upon the overwhelming interest in this trial, the Court firmly believes that potential jurors will be less candid in their responses to the voir dire questions if they are facing a courtroom full of journalists who are recording their every word. Thus, to ensure that candid responses are received from the potential jurors, and to protect the rights of both parties to a fair trial from an impartial jury, this Court will limit the number of people who may be present inside the courtroom where the live proceedings will be conducted during the jury selection process. Accordingly, as this Court noted in its December 19, 2006 Order, it will permit only two journalists to be present in the courtroom during the voir dire process.[2]

Although the Court is placing this limitation on the number of journalists who may be present in Courtroom 16, this restriction will not diminish the openness of the proceedings for several reasons. First, credentialed journalists will have access to a Media Center where they will be able to view the proceedings in their entirety (including jury selection) through live closed circuit video and audio feeds.[3] Moreover, a second courtroom has been equipped with a closed circuit video and audio feed which will be available for the public and other journalists to view the proceedings. At no time in the history of this courthouse have such accommodations been provided to the public and the press in a criminal case. The movants, however, have not commented on why this Court's plan does not provide them with adequate access to the proceedings. Rather, they simply restate the First Amendment legal principles underlying the right to public access to judicial proceedings. The Court concludes that it has safeguarded those

---

[2] In fact, due to space limitations in the courtroom and the number of jurors who will comprise the venire, there will be limited seating capacity for journalists and the general public during the initial questioning of the entire panel and when the peremptory strikes are exercised.

[3] No recordings of either the audio or video feed will be permitted.

constitutional principles and that the access being provided to the proceedings "satisf[ies] the appearance of justice." Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 556 (1980) (quoting Offutt v. United States, 348 U.S. 11, 14 (1954)).

Although the Court anticipates that the vast majority of the jury selection process will be open to the public, the Court will instruct each juror that, consistent with Cable News Network, 824 F.2d at 1046, they may request to answer questions at the bench if their responses to such questions "touch[] on deeply personal matters that [the person] has legitimate reasons for keeping out of the public domain." Id. at 1048 (quoting Press-Enterprise Co. v. Superior Court of California, 464 U.S. 501, 511 (1984)).  This will ensure that the prospective juror's privacy interests are protected while ensuring that most of the jury selection process remains open to both the public and the press.  Although the movants suggest that no such questions will be asked in this case, they are wrong.  For example, this Court will ask prospective jurors whether they, their close friends, or their close relatives have ever been the victim of a crime, a witness to a crime, or someone charged with a crime.  There can be little doubt that responses to this question could be "deeply personal."[4]  Thus, when requested, jurors will be afforded the opportunity to provide such responses at the bench.  This process does not offend the First Amendment and to the extent the movants are requesting that such responses be provided in the presence of the general public and the press, the request is denied.

The movants also request that this Court make available to them daily audio recordings of the proceedings during the trial.  This request will also be denied.  First, this Court does not (and

---

[4] For example, in this Court's experience jurors are not inclined to reveal in a public setting that they were victims of a sexual assault or child molestation.  In addition, the Court will ask whether any of the prospective jurors have any health problems that might impair their ability to sit as a juror.  Responses to this question may also be repressed if they have to be made publically.

3

will not) make an audio recording of any of the proceedings of the trial of this matter.[5] Moreover, even if an official audio recording of the proceedings was produced, the Judicial Conference of the United States has made clear that "[e]xcept with respect to ceremonial proceedings and appellate proceedings, the Conference policy does not authorize the contemporaneous photographing, recording, or broadcasting of proceedings from the courtroom to the public beyond the courthouse walls." The Guide to Judiciary Policies and Procedures, Vol. I, Chapter III, p. 27 (April 2001) ("Judiciary Policies"). In addition, "except in connection with [these] enumerated exceptions, the Conference policy does not authorize audio or video taping in the courtroom for the purposes of subsequent public dissemination." Id. Also, this Court's own Local Criminal Rules confirm that while broadcasting, televising, recording, or photographing of investitive, ceremonial, or naturalization proceedings is permissible, "[t]he taking of photographs and operation of tape recorders inside the United States Courthouse . . . during the progress of or in connection with judicial proceedings . . . are prohibited." LCrR 53.1.1.

The movants discuss at length the fact that various appellate courts make available audio or video recordings of their proceedings. There is, however, an explicit exception in the Judiciary Policies for the broadcasting of appellate arguments. Judiciary Policies at 27. And while the movants are not seeking live broadcasting of the proceedings, they are seeking audio recordings during the course of the trial in this matter, which is clearly contrary to the Local Rules. See LCrR 53.1.1. Moreover, this Court cannot accept the movants' characterization of their request as simply "after-the-fact" audio recordings of the proceedings. Unlike appellate

---

[5] The court reporter, however, does make an audio recording of the proceedings in order to produce an accurate written transcript. This recording, however, is produced by the court reporter's personal equipment and is not the official record of the proceedings. It is therefore not available to the public.

proceedings, which last at most an hour and are then taken under advisement by the judges who will decide the case, the proceedings in this case will continue in progress for at least a month, during which every effort will be made by the Court to ensure that the non-sequestered jurors are not exposed to media coverage of the trial which could potentially impact their ability to decide the case based solely on the evidence.[6]  The non-existent potential that appellate judges will be influenced by hearing the advocates' arguments anew in the media, is not the case when it comes to lay jurors.  Not only is there the potential that jurors will be exposed to hearing testimony or arguments of counsel again in an uncontrolled setting, but it is likely that if this occurred only some of the jurors would be exposed to the media coverage (and quite possibly different coverage), and in all probability they would be exposed to only part of what was actually presented during the trial.[7]  Moreover, it is inevitable that what is presented in the media will be accompanied by commentary by media personnel and lawyers requested by the media to provide commentary on what has occurred during the trial.  All of these possible scenarios would jeopardize the requirement that cases be decided by jurors solely on what is presented to them in the courtroom.  And while the Court is confident that it can shield the jury from the anticipated onslaught of media coverage that will be generated by the trial of this matter, the Court is equally confident that its ability to successfully accomplish this required objective will possibly be compromised if audio recordings of the proceedings are transmitted to the public by the electronic media.  Therefore, even if an official audio recording of the proceedings was going to

---

[6] The movants indicate that several federal district courts make audio recordings of trial proceedings available to the media.  However, it is not represented that such recordings are made available of ongoing trial proceedings that are being heard by a jury in criminal cases.  This Court is aware of no such precedent, and to the extent that such precedent does exist, the Court would not follow it.

[7] Such limited exposure could possibly cause jurors to give greater focus to those matters on which they were re-exposed.  And, this would not be in accordance with their obligation to equally consider all of the evidence presented to them.

be produced, the Court would not assent to the movants' request for daily copies of the audio recordings (or any form of audio recordings) of the proceedings.

To be sure, in a jury trial, there is always a level of tension that exists between the media's right to report on a case while it is in progress and the parties' right to have the case decided solely on what is presented during the trial.  This is especially true when there is significant media interest in the case, as is the situation here.  Thus, while the Court has endeavored to afford the media and the general public unprecedented access to the proceedings, as compared to what has been the norm in criminal cases tried in this courthouse, it cannot assent to the release of a daily recording of the proceedings.  Such a release would add little, if anything, to the media's ability to report on the proceedings and because of the sensationalism that would result from media broadcasts of testimony presented by, for example, the Vice President and Tim Russert, it is all too possible that the parties' ability to obtain an adjudication based solely on what was presented during the trial will be compromised due to the enhanced media coverage that would likely result from the ability to disseminate the actual audio testimony of such luminaries over the airways.

As discussed herein, this Court has made extraordinary efforts to ensure that the trial of this matter is open to both the public and press and it is confident that the benefits of providing public access to the criminal justice system are fully realized with the procedures that will be employed.  Accordingly, it is hereby this 8th day of January, 2007,

**ORDERED** that the movants' Application for Access to Voir Dire and Audio Recordings is **DENIED**.

**SO ORDERED** this 9th day of January, 2007.

_____
REGGIE B. WALTON
United States District Judge